# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF TEXAS

# HOUSTON DIVISION

| | | |
|---|---|---|
| **TEMPUR-PEDIC INT'L INC., et. al,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:12-472** |
| | § | |
| **ANGEL BEDS LLC et. al.** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Angel Beds, LLC, the Merrick Group, LLC, the Merrick Group Capital 1, LTD, and Philip A. Krim's ( "Defendants") Motion to Dismiss and Motion for a More Definite Statement **(Instrument No. 9)**. After a careful review of the pleadings; the motion, responses, and replies; the record; and the applicable law, the Court **DENIES** Defendants' Motion to Dismiss and Motion for a More Definite Statement **(Instrument No. 9)**.

## I.

## A.

This is a trademark infringement case. Defendant Angel Beds ("Angel Beds") and Plaintiff Tempur-Pedic ("Tempur-Pedic") are competitors selling mattresses, pillows, and other bedding-related products.[1] Angel Beds uses comparative advertising to show shoppers that its products provide features and quality comparable to Tempur-Pedic. Tempur-Pedic claims that these advertising practices infringe and dilute the value of their trademarks. Tempur-Pedic brings suit to enjoin further use of their

---

[1] The parties involved in this suit are numerous. Plaintiffs include Tempur-Pedic International, Inc., Tempur-Pedic Management, Inc., Tempur-Pedic North America, LLC, and Dan-Foam APS. Defendants include Angel Beds, LLC, the Merrick Group, LLC, The Merrick Group Capital 1, LTD, and Philip A. Krim. For the sake of brevity, the plaintiffs will be referred to as either "Plaintiffs" or simply "Tempur-Pedic." Similarly, the defendants will be refereed to as either "Defendants" or simply "Angel Beds.".

trademark and to recoup the financial losses it has incurred as a result of the alleged advertising practices.

**B.**

Tempur-Pedic is involved in the research, development, manufacture, supply, and sale of premium mattresses, pillows, and other comfort products. Tempur-Pedic products are made from TEMPUR Material, a type of viscoelastic, temperature sensitive, and pressure relieving foam that is proprietary to Tempur-Pedic and a valuable, highly confidential trade secret. (Instrument No. 1, at 4). Tempur-Pedic owns various registered and unregistered marks used in connection with the worldwide promotion, distribution, and marketing of Tempur-Pedic products. *See* (Instrument No. 1, at 7).

Tempur-Pedic maintains a commercial web site at the URL www.tempurpedic.com. Tempur-Pedic uses the Tempur-Pedic Marks to advertise and sell Tempur-Pedic products to consumers directly through its www.tempurpedic.com web site. Tempur-Pedic uses the Tempur-Pedic Marks elsewhere on the Internet to promote Tempur-Pedic products to consumers. In order to preserve the integrity of the Tempur-Pedic brand, Tempur-Pedic generally prohibits its authorized retailers from selling Tempur-Pedic products over the Internet. *See* (Instrument No. 1, at 8).

According to Plaintiffs, Defendants own and operate multiple commercial websites that sell mattresses and other ancillary products, including but not limited to www.angelbeds.com, www.tempurpedic-comparison.com, and www.mattress-find.com. Tempur-Pedic claims that Defendants use the Tempur-Pedic Marks in a bold and facially improper fashion. Plaintiffs assert that Defendants' improper use of Tempur-Pedic's marks is intended to cause both initial consumer confusion and actual consumer confusion in order to drive consumers to Defendants' websites, where Defendants sell products with names that are confusingly similar to the product names used by Plaintiffs. *See* (Instrument No. 1, at 8-9).

In 2005, Tempur-Pedic filed a civil lawsuit against Angel Beds, LLC, d/b/a www.angelbeds.com, styled Tempur World, LLC, et al. v. Angelbeds.com, Civil Action No. 1:06- CV-

00455-SS, in the United States District Court for the Western District of Texas, Austin Division ("the 2005 Infringement Lawsuit"). The 2005 Infringement Lawsuit was based upon, among other acts, Angel Bed's use of the Tempur-Pedic Mark as part of the domain name www.tempurpedic.angelbeds.com to mislead consumers and to make false and misleading commercial advertising claims relating to the Tempur-Pedic Marks and Tempur-Pedic products in violation of the Lanham Act, 15 U.S.C. § 1125(a), (b), and (c). (Instrument No. 1, at 9).

In 2006, Tempur-Pedic and Angel Beds entered into a written settlement agreement ("Settlement Agreement") in an effort to resolve Tempur-Pedic's claims in the 2005 Infringement Lawsuit. In the Settlement Agreement, Angel Beds agreed to, *inter alia*, (1) cease all use of the www.tempurpedic.angelbeds.com URL, (2) cease all use of the registered mark "Tempur-Pedic" and substantially-similar variations in keyword metatags and description metatags, and (3) cease all use of the registered mark "Tempur-Pedic" and substantially similar variations in title tags except that Angelbeds may use the phrase, 'Compare Angelbeds Mattresses to Tempur-Pedic Mattresses" or a substantially-similar equivalent phrase in which 'Angelbeds' precedes the Tempur-Pedic Mark and the Tempur-Pedic Mark is used no more than once in its Title Tag. Additionally, Angel Beds agreed that it will not use Tempur-Pedic's trademarks except in truthful, comparative statements. (Instrument No. 1, at 9).

According to Plaintiffs, in 2008, Angel Beds began using Tempur-Pedic's trademarks on its websites in a manner that violated both the express terms of the Settlement Agreement and also Tempur-Pedic's trademark rights under the Lanham Act and Texas common law. In 2008, for example, Defendants registered the domain name www.tempurpediccomparison.com. Defendants used this website, whose name is confusingly similar to Plaintiffs' website, to place misleading and confusing ads that redirect consumers to www.angelbeds.com. *See* (Instrument No. 1, at 10). Moreover, from June 2008 until at least September 2011, Angel Beds, without Tempur-Pedic's knowledge or consent, began using numerous trademarks owned by Plaintiffs in a link block on its website in violation of Tempur-

Pedic's trademark rights under the Lanham Act and Texas common law and in direct violation of Angel Beds' agreement to only use the Tempur-Pedic Marks in "truthful, comparative statements." *Id.*

Additionally, the Plaintiff alleges that by June 2008, Angel Beds renamed its products and began using Tempur-Pedic's product nomenclature in bad faith, causing the relevant public to be confused, mistaken, and deceived into wrongfully attributing source, sponsorship, approval and/or authorization of Defendants' goods, services, and business operations to Tempur-Pedic. *See* (Instrument No. 1, at 11).

In 2011, when Plaintiffs learned of Defendants' misconduct, Tempur-Pedic provided Defendants with written notice of its intellectual property rights, Defendants' infringement of the Tempur-Pedic Marks, and the unfair practices which had come to Tempur-Pedic's attention. Written notice was provided to Angel Beds on at least three separate occasions in 2011. Although Defendants agreed to change certain aspects of their websites after receiving these notices, Plaintiffs claim that Defendants continue to impermissibly use the Tempur-Pedic Marks in a manner that violates both the Settlement Agreement and state and federal trademark laws. *See* (Instrument No. 1, at 12).

## C.

On February 16, 2012, Plaintiff filed suit in the United States District Court in and for the Southern District of Texas. In the Complaint, Plaintiffs sue the Defendants for (1) trademark infringement under Section 32 of the Lanham Act, (2) unfair competition under Section 43 of the Lanham Act, (3) trademark dilution under Section 43 of the Lanham Act, (4) unfair competition under Texas law, (5) trademark dilution under Texas law, (6) cyber-squatting under Section 32 of the Lanham Act, and (6) breach of contract under Texas law. *See* (Instrument No. 1).

On May 1, 2012, Defendants filed the instant Motion to Dismiss and Motion for a More Definite Statement. *See* (Instrument No. 9). In the Motion to Dismiss, Defendants move to dismiss count two—the count regarding unfair competition under the Lanham Act—and count seven—the breach of contract count—pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the basis that the count two and count seven fail to state a claim upon which relief can be granted. *See* (Instrument No. 9, at 11).

In the Motion for a More Definite Statement, Defendants argue that count two, the count regarding unfair competition under the Lanham Act, does not precisely describe the nature of the marks Defendant is alleged to have infringed and therefore Defendants cannot reasonably prepare a responsive pleading. *See* (Instrument No.9, at 12). Defendants further contend that count three, the count regarding trademark dilution under the Lanham Act, does not adequately detail the dilutive acts Defendants are alleged to have committed and therefore Defendants cannot properly prepare an answer responsive to this allegation. *See* (Instrument No. 9, at 11-12).

On May 22, 2012, Plaintiffs filed a Response to Defendants' Motion to Dismiss and Motion for a More Definite Statement. *See* (Instrument No. 11). In the Response, Plaintiffs contend that the Motion to Dismiss should be denied because the Complaint sufficiently articulates a claim regarding both count two, the count regarding unfair competition under the Lanham Act, and count seven, the breach of contract count.  *See* (Instrument No. 11, at 10-22). In the Response, the Plaintiffs further argue that the Defendants' Motion for a More Definite should be denied because the allegations contained in count two and count seven sufficiently describe the basis for Plaintiffs' claims and provide the Defendants with adequate information to formulate a response to the Complaint. *See* (Instrument No. 11, at 22-24). On May 31, 2012, the Defendants filed a Reply to the Plaintiffs' Response wherein they contend, *inter alia,* that the Plaintiffs have not articulated a claim of false advertising under section 43(a) of the Lanham Act, the Plaintiffs have not stated a claim for breach of contract, and the trademark dilution claim requires re-pleading. *See* (Instrument No. 15).

## II.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action

will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, a complaint that articulates "naked assertions devoid of further factual enhancement" is similarly insufficient to satisfy the pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 678 (internal punctuation omitted).

When a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must articulate "the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Stated otherwise, in order to withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010). A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. This "plausibility standard is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Twombly*, 550 U.S. at 557.

Under this rubric, dismissal is proper only if the plaintiff's complaint: (1) does not include a cognizable legal theory, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), or (2) includes a cognizable legal theory but fails to plead enough facts to state a claim to relief that is plausible on its face, *Pleasant*, 663 F.3d at 775; *see also Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) (Gilmore, J.) (holding that dismissal pursuant to Rule 12(b)(6) "can be based either on

a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory").

When ruling on a 12(b)(6) motion, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[2] *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court does not resolve any disputed fact issues. *Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633 (1999). Instead, the Court assumes all well-pleaded facts contained in the complaint are true. *Wolcott*, 635 F.3d at 763. The Court will not, however "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). Similarly, legal conclusions masquerading as factual conclusions need not be treated as true. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *see also Iqbal*, 556 U.S. at 678. Although all well-pleaded facts are viewed in the light most favorable to the plaintiff, *Turner*, 663 F.3d at 775; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), the Court "will not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal citations and quotations omitted). Therefore, "to avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts." *Dorsey*, 540 F.3d at 338.

That said, "motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). Given the harshness of dismissal, the Court will generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.

---

[2] Matter of which a court may take judicial notice includes, for example, matters of public record. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given.") (internal citations omitted).

**III.**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move to dismiss count two—the count regarding unfair competition under the Lanham Act—and count seven—the breach of contract count—on the basis that the count two and count seven fail to state a claim upon which relief can be granted. *See* (Instrument No. 9).

**A.**

1.

Before turning to the sufficiency of Plaintiffs' complaint, the Court must first determine whether the claims in count two of the complaint are subject to the liberal pleading rules of Rule 8 or whether they are subject to the heightened pleading requirements of Rule 9.  In count two, Plaintiffs allege that the Defendants used Plaintiffs' marks in misleading contexts, thereby misleading consumers into believing that Defendants' products were somehow associated with Plaintiffs' products. *See* (Instrument No. 1, at 16). According to Plaintiffs, this conduct amounted to unfair competition in violation of section 43(a) of the Lanham Act. *See* (Instrument No. 1, at 16). In the Motion to Dismiss, Defendants argue that the allegations contained in count two essentially accuse Defendants of engaging in fraudulent conduct. Therefore, Defendants contend that the claims advanced in count two should be subject to Rule 9's heightened pleading requirements for fraud. *See* (Instrument No. 9, at 6). Under Rule 9 "a plaintiff pleading fraud [must] specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey*, 540 F.3d at 339. At a minimum, this requires the "complaint to set forth the who, what, when, where, and how" of the events at issue." *Dorsey*, 540 F.3d at 339 (internal citations and quotations omitted).

In order to determine the pleading requirement of the claim alleged in count two of the Complaint, the Court must first consider section 43(a) of the Lanham Act, for this is the statute upon

which the claim in count two is predicated. Section 43(a) of the Lanham Act provides in relevant part that:

> Any person who … in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011). As the United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit") has explained, this section of the Lanham Act provides "protection against a myriad of deceptive commercial practices, including false advertising or promotion." *Pizza Hut v. Papa John's Int'l*, 227 F.3d 489, 494-95 (5th Cir. 2000). Although it is true that the statute prohibits material false statements about a product that have the capacity to deceive a substantial segment of potential customers, *Pizza Hut*, 227 F.3d at 495, the Court has not found, nor have the parties cited, any decision from the Fifth Circuit subjecting section 43(a) claims to the heightened pleading requirements of Rule 9(b). On review, this Court concludes that Rule 9 is inapplicable to such claims.

On its face, section 43(a) prohibits false or misleading representations; the statute makes no mention of intent to deceive or defraud. Therefore, a plain reading of the statute indicates that section 43(a) was intended to prohibit false or misleading representations regardless of the perpetrator's intent. This is noteworthy given that fraud generally requires that the misleading representations be made with the intent to deceive. *See* Restatement (Second) of Torts §§ 525-526 (1977); W.Keeton, D.Dobbs, R.Keeton, & D.Owen, Prosser and Keeton on Law of Torts § 108, pp. 749-753 (5th ed. 1984); *see e.g. Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Therefore, Rule 9 is often reserved for claims predicated on statutes or common law that requires some showing of scienter. *See, e.g., United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010); *Dorsey*, 540 F.3d at 339-40; *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641-43; *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 363 (5th Cir. 2004); *Tuchman.*, 14 F.3d at 1068. Given that section

43(a) does not contain a scienter element, the Court finds that section 43(a) is not concerned with fraud and therefore claims brought pursuant to this provision do not fall within the ambit of Rule 9. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (Rule 9(b) imposes a particularity requirement in two specific instances: in all averments of fraud or mistake. In all other instances, the Plaintiff's pleadings are examined under the liberal requirements of Rule 8).

The lower district courts in this circuit that have had occasion to consider the issue have also concluded that the sufficiency of these claims should be determined under Rule 8 rather than Rule 9. *See Clearline Techs., Ltd. v. Cooper B-Line*, 2012 U.S. Dist. LEXIS 2116, at *19 (S.D. Tex. Jan. 9, 2012); *Vendever Llc v. Intermatic Mfg.*, 2011 U.S. Dist. LEXIS 105257, at *12 (N.D. Tex. Sept. 16, 2011) ("the relevant case law does not show [that a] heightened pleading standard akin to Rule 9(b) should apply to [the plaintiff's section 43(a) claims]"); *Axxiom Mfg., Inc. v. McCoy Investments, Inc.*, 2010 U.S. Dist. LEXIS 61206, at *22 (S.D. Tex. June 21, 2010) ("Although the Fifth Circuit has not held that a heightened pleading standard under Rule 9 applies to allegations of false statements in an unfair competition claim, there must be some factual allegation about what the alleged misrepresentation was."); *Healthpoint, Ltd. v. Allen Pharm., LLC*, 2008 U.S. Dist. LEXIS 20971, at *8 n.4 (W.D. Tex. Mar. 18, 2008) ("Defendants argue that Rule 9's particularity requirements apply [to plaintiff's section 43(a) claims] and th[erefore] 'the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby must be stated in a complaint.' However, the Fifth Circuit has not held that a heightened pleading standard applies to false advertising claims under § 43(a) of the Lanham Act."); *Microsoft Corp. v. Chen*, 2005 U.S. Dist. LEXIS 47169, at *3-5 (plaintiff's Lanham Act claims were not subject to Rule 9 because Lanham Act claims do not require a showing of fraud or intent to defraud). As the United States District Court for the Northern District of Texas explained, section 43(a) "does not require intent to deceive as a necessary element of a Section 1125(a) violation." *Stubbs Collections, Inc. v. Davis*, 2000 U.S. Dist. LEXIS 4719, at *13 (N.D. Tex. Apr. 14, 2000). "Therefore, Plaintiff's federal Lanham Act claims do

not allege claims of fraud and are not subject to Rule 9(b)'s particularly in pleading requirements."

*Stubbs*, 2000 U.S. Dist. Lexis 4719, at *13.

Outside of this circuit, lower courts are split. Some courts have held that the fraud-like nature of section 43(a) claims should require a plaintiff to specify the nature and content of any alleged misrepresentations attributed to the defendant. *See, e.g., In re Century 21- RE/MAX Real Estate Adver. Claims Litig.*, 882 F. Supp. 915, 927 (C.D. Cal. 1994); *Barr Labs., Inc. v Quantum Pharmics, Inc.*, 827 F. Supp. 111, 117-18 (E.D.N.Y. 1993); *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549, 1556 (E.D. Penn. 1985). Other courts have declined to subject section 43(a) claims to the rigors of Rule 9 and have instead reviewed these claims under the short and plain statement standard of Rule 8(a). *See Syncor Int'l Corp v Newbaker*, 12 F. Supp. 2d 781, 783-84 (W.D. Tenn. 1998), *John P. Villano Inc v CBS, Inc,* 176 F.R.D. 130, 131 (S.D.N.Y. 1997); *Brandt Consol., Inc. v. Agrimar Corp.*, 801 F. Supp. 164, 170 (C.D. Ill. 1992). As the United States District Court for the Southern District of New York explained in *Villano*:

> Fraud requires, not just the making of a statement known to be false, but also, *inter alia*, a specific intent to harm the victim and defraud him of his money or property. That is why Rule 9(b) has been interpreted to require, not just a specification of the alleged misrepresentations, but also a particularization of the facts giving rise to a strong inference that defendant acted with fraudulent intent. By contrast, no fraudulent intent nor even a willful intent to trade on the owner's reputation or to cause dilution of the famous mark is required under 15 U.S.C. § 1125.
>
> Consequently, a claim of false advertising under § 1125 (and parallel provisions of New York State law) falls outside the ambit of Rule 9(b) and may not be the subject of any heightened pleading requirement.

*Villano*, 176 F.R.D. at 131 (internal quotations and citations omitted). Given the weight of the law, the Court concludes that the sufficiency of section 43(a) claims should be reviewed under Rule 8 rather than Rule 9.

Moreover, as the Fifth Circuit has explained, "[w]here averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask

whether a claim has been stated." *Lone Star Ladies Inv. Club v.Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Accordingly, "even if a plaintiff buttresses a statutory claim with allegations of fraud that are insufficient to meet Rule 9(b), the claim will not be dismissed so long as there are other non-fraud based allegations that are sufficient to state a claim for relief [under the statute]." *Khan v. Allstate Fire & Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 63842, at *11 (S.D. Tex. May 7, 2012).

2.

Plaintiffs claim that Defendants have wrongfully used Plaintiffs' marks in misleading contexts to deceive consumers into believing that Defendants' products were somehow associated with Plaintiffs' products in violation of section 43(a) of the Lanham Act. *See* (Instrument No. 1, at 16). Defendants seek to dismiss the claim, arguing that Plaintiffs have not made a claim for false advertising under the Lanham Act. *See* (Instrument No. 9, at 8).[3] Section 43(a) of the Lanham Act provides in relevant part that:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any . . . false or misleading description . . . [or] misrepresentation of fact, which . . . in commercial advertising or promotion misrepresents the nature, characteristics, [or] qualities . . . of his or her . . . goods, services or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B); *FNC, Inc.*, 634 F.3d at 796. A prima facie case of false advertising under section 43(a) requires the plaintiff to establish: (1) a false or misleading statement of fact about a product; (2) that such statement either deceived, or had the capacity to deceive, a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Pizza Hut*, 227 F.3d at 495; *accord Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 400 (5th Cir. 2008).

---

[3] Although section 43(a) covers more than just false advertising, Defendants' motion to dismiss only seeks to dismiss the section 43(a) claim for false advertising. *See* (Instrument No. 9, at 8); *see also* (Instrument No. 15, at 2-5) (Defendants' Reply wherein they specifically argue Plaintiffs have not demonstrated a claim for false advertising). Thus, the Court only considers whether Plaintiffs have stated a claim for false advertising.

According to Plaintiff, "Tempur-Pedic Marks and variants thereof, as used in connection with premium mattresses, pillows, and other comfort products are distinctive marks that have become exclusively associated with Tempur-Pedic." (Instrument No. 1, at 16). These "[m]arks and variants thereof have been extensively and continually used, advertised, and promoted by Tempur-Pedic within the United States and worldwide for the past nineteen years." (Instrument No. 1, at 7).

The Complaint further alleges that "from June 2008 until at least September 2011, without Tempur-Pedic's knowledge or consent, Angel Beds began using the Tempur-Pedic, The OriginalBed by Tempur-Pedic, The ClassicBed by Tempur-Pedic, the DeluxeBed by Tempur-Pedic, the RhapsodyBed by Tempur-Pedic, the PrimaBed by Tempur-Pedic, the CelebrityBed by Tempur-Pedic, and the GrandBed by Tempur- Pedic trademarks (and others) in a link block on its website." (Instrument No. 1, at 10). Moreover, "in 2008, Defendants registered the domain name www.tempurpediccomparison.com." (Instrument No. 1, at 10). Defendants use "this confusingly similar domain name to place misleading and confusing ads that re-direct traffic to www.angelbeds.com." (Instrument No. 1, at 10).

According to Plaintiffs, Defendants' advertising used the Tempur-Pedic marks "in order to drive Internet traffic to its website by manipulating search engines, causing initial consumer confusion and/or actual consumer confusion." (Instrument No. 1, at 10). Moreover, Plaintiffs contend that Defendants' use of Tempur-Pedic's marks in their web advertising "cause initial consumer confusion and/or actual consumer confusion regarding the source, sponsorship, approval and/or authorization of Defendants' goods, services, and business operations by Tempur-Pedic." *Id.* Plaintiffs contend that Defendants trade practices are "likely to confuse customers as to (1) the nature of the relationship between Defendants and Tempur-Pedic, (2) Tempur-Pedic's approval of Defendants' business operations conducted under the name and mark TEMPUR-PEDIC, and (3) the nature and quality of the products sold by Defendants." (Instrument No. 1, at 12). Plaintiffs allege that these practices have the capacity to deceive because "customers and prospective customers of Defendants' products are deceptively led to believe

that Defendants' products are affiliated, connected, associated, sponsored or otherwise approved by Tempur-Pedic, when in fact Defendants have no connection or affiliation whatsoever with Tempur-Pedic in regard to such products." (Instrument No. 1, at 16).

Given that these marks are "distinctive…and have become exclusively associated with Tempur-Pedic," (Instrument No. 1, at 16), Plaintiffs contend that Defendants' use of Tempur-Pedic's trademarks will attract customers to Defendants' websites, where Defendants sell products that directly compete with those offered by the Plaintiffs. (Instrument No. 1, at 12). As a result, "the relevant public will be confused, mistaken, and deceived into wrongfully attributing source, sponsorship, approval and/or authorization of Defendants' goods, services, and business operations by Tempur-Pedic, irreparably injuring Tempur-Pedic's goodwill, business reputation, and valuable intellectual property, including its trademarks." (Instrument No. 1, at 14).

On these facts, the Court finds that Plaintiffs have unquestionably asserted a plausible claim for violation of section 43(a) of the Lanham Act. Plaintiffs have alleged that Defendants made false or misleading statements about products the Plaintiffs have placed in the stream of interstate commerce, these statements had the capacity to deceive a substantial segment of potential customers, the deception is likely to influence the potential customer's purchasing decision, and Plaintiffs have been injured by Defendants' conduct. *See Pizza Hut*, 227 F.3d at 495. Accordingly, Defendants' Motion, to the extent it seeks dismissal of the Complaint's Lanham Act false advertising claim, is hereby **DENIED**.

**B.**

In count seven of the Complaint, Plaintiffs allege that Defendants breached the terms of the parties' 2006 Settlement Agreement, wherein Plaintiffs agreed to dismiss their patent infringement suit against Defendants in exchange for Defendants' promise to refrain from using Plaintiffs' trademarks in connection with the promotion, advertising, and selling of Angel Beds' products. (Instrument No. 1, at 23-24) (citing Instrument No. 1-3). Defendants contend that Plaintiffs' breach of contract claim should

be dismissed because the Plaintiffs "do not plead any specific factual allegations that show how Angel Beds is alleged to have breached the Settlement Agreement." (Instrument No. 9, at 10).

The parties both contend that the breach of contract claim is governed by Texas law. *See* (Instrument No. 9, at 10; Instrument No. 11, at 20). In Texas, "the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)); *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

In the Complaint, Plaintiffs allege that: (1) "[i]n 2006, Tempur-Pedic and Angel Beds entered into a written settlement agreement," *see* (Instrument No. 1, at 9, 23); (2) the Settlement Agreement, which is attached to the Complaint,[4] states that in consideration of the terms and conditions of the Settlement Agreement Plaintiffs agree to release Angel Beds from all claims related to the 2005 infringement suit, *see* (Instrument No. 1-3, at 3). Tempur-Pedic claims that it has performed all actions required of it by the Settlement Agreement and all conditions precedent to Defendants' duty to perform have been performed, *see* (Instrument No. 1, at 23); (3) under the terms of the Settlement Agreement, Defendants agreed to cease all use of the www.tempurpedic.angelbeds.com URL, cease the use of the "Tempur-Pedic" mark or substantially-similar variants thereof, and refrain from using Plaintiffs' trademarks except in truthful comparative statements, *see* (Instrument No. 1-3, at 2-3); *see also* Instrument No. 1, at 9). Plaintiffs, however, claim that the Defendants have: (a) used Tempur-Pedic's trademarks in a prominent link block on their website in order to drive Internet traffic to their website by manipulating search engines, *see* (Instrument No. 1, at 10); (b) used the domain name

---

[4] When reviewing a motion to dismiss, the Court may consider any attachments to the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). In this case, the Settlement Agreement was attached to the Plaintiffs' Complaint. Therefore, the Court may consider the information contained within the Settlement Agreement when assessing the sufficiency of the Plaintiff's allegations and ruling on Defendants' motion to dismiss. *See e.g. Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006); *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003).

www.tempurpedic-comparison.com in misleading and confusing ads in order to re-direct traffic to www.angelbeds.com and cause initial consumer confusion and/or actual consumer, *see* (Instrument No. 1, at 10); (c) appropriated the Tempur-Pedic trademarks by using portions of Tempur-Pedic's unique product names in the promotion and sale of Angel Beds' products, *see* (Instrument No. 1, at 11); and (d) have used the Tempur-Pedic trademarks in its Title Tags on www.angelbeds.com, all in violation of the terms of the Settlement Agreement, *see* (Instrument No.1, at 10); and (4) as a proximate result of the Defendants' acts, "Tempur-Pedic [has] suffered and will continue to suffer irreparable damage to its goodwill, reputation, and business;" unless Defendants "are ordered to perform under the contract, Tempur-Pedic will continue to suffer irreparable harm." (Instrument No. 1, at 23).

When these facts and all reasonable inferences there from are viewed in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have stated a plausible claim for breach of contract. Plaintiffs' complaint shows the existence of a contract, it further demonstrates that Plaintiffs tendered the performance required by the contract, the Defendants breached the terms of the contract, and Plaintiffs were injured as a result of Defendants' breach. On these facts, the Court finds that Plaintiffs have sufficiently alleged that Defendants are liable for breach of contract. As such, the Defendants' motion to dismiss the breach of contract is **DENIED.**

## IV.

In count three, Plaintiffs allege a claim for trademark dilution under § 43(c) of the Lanham Act. In count five, Plaintiffs allege a claim trademark dilution under Texas state law. *See* (Instrument No. 1, at 17-18; 20-21). Defendants argue that it is "unclear which of Plaintiffs' marks are encompassed by this claim" and therefore Angel Beds moves for a more definite statement under Rule 12(e). (Instrument No. 9, at 11). Defendants also contend that Plaintiffs' claims of unfair competition in violation of section 43(a) of the Lanham Act are ambiguous and therefore Plaintiffs must supply them with a more definite statement. *See* (Instrument No. 9, at 12.)

Rule 12(e) of the Federal Rules of Civil Procedure provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e).

Rule 12(e) however must be read in light of Rule 8. The pleading requirements of Rule 8 do not require a claimant to set out in detail the facts upon which he bases his claim. *Iqbal*, 556 U.S. at 678. Under Rule 8, all that is required is a short and plain statement of the claim that will give notice of what the plaintiff's claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Such simplified notice pleading is made possible by the liberal opportunity for discovery and other pretrial procedures established by the Rules that enable the parties to more narrowly define the disputed facts and issues and thus better disclose the basis of a claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Travelers Indem. Co. v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648, 653 (N.D. Tex. 2004). At the pleading stage, the plaintiff need only plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of [an essential element of plaintiff's claim]." *Twombly*, 550 U.S. at 555.

Given that Rule 8 only requires a short and plain statement of claims, "a motion for more definite statement is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail." *Pension Advisory Group, Ltd. v. Country Life Ins. Co.,* 771 F. Supp. 2d 680, 707 (S.D. Tex. 2011); *Travelers,* 313 F. Supp. 2d at 654; *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001). The touchstone is whether the complaint is so vague or ambiguous that the defendant cannot reasonably prepare a response. Fed. R. Civ. P. 12(e); *see also Henry v. Chase Home Fin., LLC,* 2011 U.S. Dist. LEXIS 139871, at *14 (S.D. Tex. Dec. 6, 2011). A Rule 12(e) motion is appropriate only where "a pleading fails to specify the allegations in a manner that provides sufficient notice." *Swierkiewicz*, 534 U.S. at 514; *accord Pension*, 771 F. Supp. 2d at 707.

Although a party may employ Rule 12(e) to enforce the minimum requirement of Rule 8's notice pleading, when defendants are complaining of matters that can be clarified and developed during discovery, rather than matters that impede their ability to form a responsive pleading, the motion for a more definite statement should not be granted. *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006); *accord Ross v. Texas*, 2011 U.S. Dist. LEXIS 136903, at * 25-26 (S.D. Tex. Nov. 29, 2011). Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court. *Travelers*, 313 F. Supp. 2d at 654; *accord Neal v. Home Depot U.S.A.*, 2011 U.S. Dist. LEXIS 138542, at * 3 (N.D. Tex. Oct. 6, 2011).

In this case, Defendant moves for a more definite statement because the Plaintiffs have not identified exactly which marks forms the basis for Tempur-Pedic's claim of trademark dilution. In the Complaint, the Plaintiffs detail the fifteen registered trademarks and the seven unregistered common law trademarks they have extensively used in connection with their domestic sales. *See* (Instrument No. 1, at 5-7). The complaint goes on to describe the method of Defendants' dilutive conduct with respect to the marks Plaintiffs use in connection with its domestic business. *See* (Instrument No. 1, at 17-18, 20-21). Specifically, the complaint alleges that: (a) Defendants used Plaintiffs' marks in a link block on Defendants' website (Instrument No. 1, at 10); (b) Defendants adopted the Plaintiffs' nomenclature to market the Defendants' own products (Instrument No. 1, at 11); (c) Defendants created websites with domain names that would cause consumer confusion as to the source and authorization of the Defendants' goods, leading consumers to believe that Defendants products were associated with the Plaintiffs' goods (Instrument No. 1, at 10); and (d) Defendants continued use of Plaintiffs' trademarks diminishes the reputation and goodwill of the Termpur-Pedic brand. (Instrument No. 1, at 18). On this record, the Court concludes that Plaintiffs have fully appraised Defendants of the marks at issue and the basis for their claims of trademark dilution. Thus, the complaint provides Defendants with adequate notice of Plaintiffs' claims and is not so vague or ambiguous that the Defendants cannot reasonably formulate a response. *See* Fed. R. Civ. P. 12(e).  The limiting information sought by Defendants can be

clarified and developed during discovery and therefore does not entitle them to the relief they seek. *See Turner v. Pavlicek*, 2011 U.S. Dist. LEXIS 108239, at * 48 (S.D. Tex. Sept. 22, 2011). Accordingly, the Motion for a More Definite Statement with respect to counts three and five of the Complaint is **DENIED.**

Defendants also move for a more definite statement with respect to count two of the Complaint. In count two, Plaintiffs allege violations of section 43(a) of the Lanham Act. *See* (Instrument No. 1, at 16-17). Defendants, however, contend that "the allegations of unfair competition in Count Two of the Complaint are at best ambiguous as to whether Tempur-Pedic is asserting complaints for infringement of trade names or unregistered trademarks and if so which ones." (Instrument No. 9, at 12). The Court begins, as always, with reference to the statute that gives rise to Plaintiffs' claims.

> Section 43(a) of the Lanham Act provides that:
>
> Any person who, on or in connection with any goods or services…uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which…
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125 (a)(1). The Defendants correctly note that section 43(a) of the Lanham Act prohibits false advertising and also protects trade names and unregistered trademarks. (Instrument No. 9, at 12) (citing *Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 267 (5th Cir. 1999). The false advertising claims provided in paragraph (b) of section 43(a) have already been discussed; the Court concluded that Plaintiffs sufficiently articulated a claim for relief under the false advertising provision of section 43(a). *See* Section III. A., *supra.*

With respect to the trademark confusion claims provided for in paragraph (a) of section 43(a), the Court finds that Plaintiffs have adequately pled a claim for relief. Although the complaint could perhaps be better organized, it nevertheless sufficiently articulates a trademark confusion claim. The Complaint contains factual allegations specifically identifying multiple instances in which Plaintiffs allege Defendants to have misleadingly used a word, term, or name to cause initial consumer confusion regarding the affiliation, connection, or association of Defendants with Tempur-Pedic or the origin, sponsorship, or approval of Defendants' activities.

First, the complaint details the fifteen registered trademarks and the seven unregistered common law trademarks Plaintiffs have extensively used in connection with their domestic sales. *See* (Instrument No. 1, at 5-7). Then, the complaint alleges that from "2008 until at least September 2011, Defendants used Tempur-Pedic's trademarks in a link block on its website in order to drive Internet traffic to its website by manipulating search engines, causing initial consumer confusion and/or actual consumer confusion." (Instrument No. 1, at 10). Plaintiffs also claim that "Defendants registered the domain name www.tempurpediccomparison.com in bad faith in order to cause initial consumer confusion and/or actual consumer confusion regarding the source, sponsorship, approval, and/or authorization of Defendants' goods or services, and business operations by Tempur-Pedic." (Instrument No. 1, at 10). Plaintiffs further accuse Defendants of mimicking Tempur-Pedic's product names causing the "public to be confused, mistaken, and deceived into wrongfully attributing source, sponsorship, approval and/or authorization of Defendants' goods, services, and business operations by Tempur-Pedic." (Instrument No. 1, at 11). Plaintiffs also allege that "Defendants used and continue to use Tempur-Pedic's trademarks to attract customers improperly to their multiple websites." (Instrument No. 1, at 12). According to Plaintiffs, this use of Tempur-Pedic's trademarks on Defendants' websites will cause the "public to be confused, mistaken, and deceived into wrongfully attributing source, sponsorship, approval and/or authorization of Defendants' goods, services, and business operations by Tempur-Pedic." (Instrument No. 1, at 12, 14).

On review, the Court finds that Plaintiffs have sufficiently demarcated the parameters of their trademark confusion claim. Plaintiffs have articulated the trademarks at issue and they further allege that Defendants have engaged in conduct which has caused a likelihood of confusion as to the origin of Defendants' goods. Plaintiffs specify in great detail the conduct which they claim violates paragraph (a) of section 43(a) of the Lanham Act. Thus, the complaint provides Defendants with adequate notice of Plaintiffs' claims and is not so vague or ambiguous that Defendants cannot reasonably formulate a response. *See* Fed. R. Civ. P. 12(e). Accordingly, Defendants' Motion for a More Definite Statement with respect to Plaintiffs' section 43(a) claims is **DENIED**.

## V.

For the foregoing reasons, Defendants' Motion to Dismiss (**Instrument No. 9**) is **DENIED** and the Defendants' Motion for a More Definite Statement (**Instrument No. 9**) is **DENIED**.

**IT IS SO ORDERED.**

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the ⎯⎯⎯ day of November, 2012, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**